IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Amvets Post #711,    Case No. 3:11CV1045

    Plaintiff

v.    ORDER

Tom Rutter, et al.,

    Defendants

This is a case involving the alleged infringement of a club owner's Fourth Amendment rights when state and county health inspectors searched the plaintiff's premises following complaints of violations of the Ohio's Smoke Free Workplace Act. O.R.C. § 3794.01 *et seq.*

This court has jurisdiction pursuant to 28 U.S.C. § 1331.

Pending are defendants' motions for judgment on the pleadings. [Doc. 16, 17]. For the following reasons, I grant defendants' motions.

**Background**

The Smoke Free Act, which went into effect on December 7, 2006, requires all public places and places of employment in Ohio to prohibit smoking. The law's purpose is to "protect all workers and the public from exposure to secondhand smoke in workplaces and public places." Ohio Dep't of Health, Smoke-free Workplace Program, http://www.ohionosmokelaw.gov/.

The Act provides that "upon receipt of a complete report of violation," the Ohio Department of Health may "investigate . . . or promptly transmit the report of violation to a designee in the jurisdiction where the report violation allegedly occurred for investigation and enforcement." Ohio Admin. Code § 3701-52-08 (D)(2). Such investigation "may include but is not limited to: . . . (c) Telephone or on-site interviews; and, (d) On-site investigations." *Id.*

Plaintiff Amvets Post #711 is located in Wood County, Ohio. Its principal place of business is at 1045 N. Main Street, Suite G, Bowling Green. Defendant Thomas Rutter is an employee with the Wood County Health Department, and defendant Bryant Hartley is an employee with the Ohio Department of Health.

On April 7, 2011, after notifying Amvets of a complaint of an alleged violation of the Smoke Free Workplace Act, Rutter and Hartley conducted an on-site investigation. Plaintiff twice attempted to refuse defendants' entry onto the premises: first, at the door, and, second, just inside the door. Plaintiff also contends that the inspectors' eventual entry was without his consent. Entry occurred, rather, only after defendants showed him a copy of O.R.C. § 3701.06. This provision grants health inspectors a right of entry:

> The director of health and any person the director authorizes may, without fee or hindrance, enter, examine, and survey all grounds, vehicles, apartments, buildings, and places in furtherance of any duty laid upon the director or department of health or where the director has reason to believe there exists a violation of any health law or rule.

Defendants then proceeded to search behind the bar and in places not normally accessible to non-members.

On May 23, 2011, Amvets filed this action against Rutter and Hartley, individually and in their official capacities, claiming a violation of Fourth Amendment rights under 42 U.S.C. § 1983.

**Standard of Review**

I review motions for judgment on the pleadings under Fed. R. Civ. P. Rule 12(c) with the same standard of review as motions to dismiss under Rule 12(b)(6). *Fritz v. Charter Township of Comstock*, 592 F.3d 718 (6th Cir. 2010) (*citing Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001)).

Under Rule 12(b)(6), a claim survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

A complaint is insufficient "if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, *supra*, 129 S.Ct. at 1949 (citing *Twombly*, *supra*, 550 U.S. at 557) (internal quotation omitted).

I must construe the pleadings "in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). Plaintiff, however, must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, *supra*, 550 U.S. at 555; *see also Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

**Discussion**

**A. Fourth Amendment Overview**

The Fourth Amendment protects

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

The underlying purpose of this Amendment "as recognized in countless decisions of [the Supreme] Court, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Municipal Court of City and Cty. of San Francisco*, 387 U.S. 523, 528 (1967). While the bulk of Fourth Amendment law is in the criminal context – when police are searching for contraband or other evidence of criminal activity – the Amendment also protects against unwarranted searches in the context of non-criminal investigations. *See, e.g., id*.

The Fourth Amendment places two principal constraints on the government prior to authorizing any search or seizure: a warrant written with particularity and specificity, and probable cause that the object of the search is within the premises. This is true for private residences, *see id.* at 534, as well as commercial premises. *See v. City of Seattle*, 387 U.S. 541, 545 (1967).

The Supreme Court has held, however, that when the business at issue is "closely or pervasively regulated," legislative schemes that provide for warrantless administrative inspections can be permissible. *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 76 (1970) (upholding a warrantless inspection pursuant to liquor regulations); *U.S. v. Biswell*, 406 U.S. 311, 315 (1972) (upholding a warrantless inspection of a licensed firearm dealer). The Court has reasoned that an "owner or operator of commercial premises in a 'closely regulated' industry has a reduced expectation of privacy[.]" *New York v. Burger*, 482 U.S. 691, 702 (1987). Thus, "where the privacy interests of the owner are weakened and the government interests in regulating particular businesses

4

are concomitantly heightened, a warrantless inspection of commercial premises may well be reasonable within the meaning of the Fourth Amendment." *Id.*

## B. Sovereign Immunity

As an initial matter, the Eleventh Amendment provides immunity to both Hartley and Rutter, in their official capacities, from Amvets' claims. *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993). Amvets does not contest the application of sovereign immunity to its claims against defendants in their official capacities.

## C. Qualified Immunity

Although public officials are not entitled to sovereign immunity when sued in their individual capacities, they can be entitled to qualified immunity. Qualified immunity is a longstanding doctrine which "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This doctrine balances "the need to hold public officials accountable when they exercise power irresponsibly" against "the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.*

My analysis of qualified immunity is two-pronged: first, I must decide whether the plaintiff has alleged a violation of a constitutional right; and second, whether the right at issue was clearly established at the time of the alleged misconduct. *Id.* at 232. It does not matter which prong I decide first; I must use my discretion "in light of the circumstances in the particular case at hand." *Id.* at 236.

The defendants initially contend that plaintiff's manager consented to the search when they first entered its premises. They also assert that plaintiff acknowledges his consent in the terms of his complaint. Plaintiff disputes this, maintaining that its complaint contains no such acknowledgements. It also asserts that the manager did not give consent at the time of the search.

The Supreme Court has held that in these circumstances – *i.e.*, where there is statutory authorization for a warrantless inspection – consent is irrelevant. *Biswell*, *supra*, 406 U.S. at 315. There, the Court held that "the legality of the search depends not on consent but on the authority of a valid statute." *Id.* I discuss and uphold the validity of the statute *infra*, and therefore need not rule on the issue of consent.

### 1. Constitutional Violation

Defendants contend that a warrant was not required for their inspection of Amvets' premises, as Amvets was "subject to governmental oversight and regulation, and an inspection for the purpose of enforcing state health regulations falls outside the purview of that requiring a warrant[.]" [Doc. 17-1 at 4].

The so-called administrative exception to the warrant requirement requires that the business at issue be "closely regulated." *Burger*, *supra*, 482 U.S. at 703. Defendants contend that Amvets, as a liquor permit holder, has a "greatly reduced" reasonable expectation of privacy.[1]

---

[1] At least one court in Ohio has ruled on this issue: the trial court in *Trish's Café & Catering, Inc. v. Ohio Dep't of Health*, 195 Ohio App.3d 612, 625-26 (Ohio. App. 10 Dist. 2011), ruled that searches under the Ohio Smoke-Free Workplace Act fit in the administrative exception to the Fourth Amendment's warrant requirement; it satisfied all three prongs of the *Burger* test. The appellate court affirmed the trial court's decision , but on the basis of the plain-view doctrine, not the administrative search exception.

It is well-established that liquor permit holders have a reduced expectation of privacy, as the liquor industry is highly regulated. *See, e.g., Colonnade*, *supra*, 397 U.S. at 76; *Russo v. Massullo*, 1991 WL 27420, *4 (6th Cir. 1991) (unpublished disposition).[2]

In *Burger*, the Court laid down a three-factor test on whether a legislative scheme for warrantless inspections of heavily regulated businesses is proper:

> First, there must be a "substantial" government interest that informs the regulatory scheme pursuant to which the inspection is made. . . . Second, the warrantless inspections must be "necessary to further [the] regulatory scheme." . . . Finally, "the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant."

*Id.* at 702-03 (quoting *Donovan v. Dewey*, 452 U.S. 594, 600-02 (1981)).

### a. Substantial Government Interest

Ohio's Smoke Free Act states its rationale:

> Because medical studies have conclusively shown that exposure to secondhand smoke from tobacco causes illness and disease, including lung cancer, heart disease, and respiratory illness, smoking in the workplace is a statewide concern and, therefore, it is in the best interests of public health that smoking of tobacco products be prohibited in public places and places of employment and that there be a uniform statewide minimum standard to protect workers and the public from the health hazards associated with exposure to secondhand smoke from tobacco.

O.R.C. § 3794.04.

The dangers of secondhand smoke are well-documented. *See* 2006 Surgeon General's Report -- The Health Consequences of Involuntary Exposure to Tobacco Smoke, *available at* http://www.cdc.gov/tobacco/data_statistics/sgr/2006/index.htm; *see also* Jessica Neizgoda, Note,

---

[2] It should be noted that although Amvets is a liquor permit holder, the regulation in question has nothing to do with bars or liquor permit holders specifically – the Ohio Smoke Free Act governs *all* workplaces, merely including bars and restaurants which serve liquor. Liquor permit holders have a reduced expectation of privacy, so the question does not arise here of whether the statute properly authorizes searches of all workplaces.

7

Kicking Ash(trays): Smoking Bans in Public Workplaces, Bars, and Restaurants, 33 J. Legis. 99, 100 (2006).

Other states have passed similar legislative schemes, banning smoking in all public places. *See, e.g.,* Colo. Rev. Stat. § 25-14-204; De. Code Ann. tit. 16, §§ 2901-2908; 410 ILCS 82; Iowa Code 142D; KSA 21-6109 *et seq.*; Me. Rev. Stat. tit. 22, § 1542; MD Clean Indoor Air Act of 2007; Mass. Gen. L. ch. 70, § 22; MCL § 333.12601 *et seq.*; Minn. Rev. Stat. § 144.414; Mont. Code Ann. § 50-40-104; N.R.S. § 71-5729; N.J. Stat. § 26:3D-58; N.M. Stat. Ann. § 24-16-4; Ore. Rev. Stat. § 433.845; R.I. Gen. Laws § 23-20.10-3; SDCL § 34-46-14; U.C.A. 1953 § 26-38-3; Ver. Stat. tit. 28 § 1428; Wash. Rev. Code § 70.160.060; W.S.A. § 101.123.

Many of these enactments, like Ohio's, authorize state health departments to conduct regulatory inspections to detect violations of their smoke-free laws. *See, e.g.,* Ariz. Rev. Stat. § 36-601.01; Haw. Rev. Stat. § 328J-1 *et seq.*; N.Y. Pub. Health Law § 1399-O. At least one court, relying on the administrative search doctrine, has upheld a regulatory regime against Fourth Amendment challenges. *Players, Inc. v. City of New York*, 371 F.Supp.2d 522, 537-39 (S.D.N.Y. 2005) (holding that the food service industry is highly regulated and inspections pursuant to New York City's Smoking Bans were permissible under the Fourth Amendment under the *Burger* test).

Public health and safety are certainly substantial government interests, and protecting citizens from the health hazards s of exposure to secondhand smoke is unquestionably a public health concern.

### b. Necessity of Warrantless Inspections

The second *Burger* factor looks to whether warrantless inspections are necessary – that is, whether requiring warrants would defeat the purpose of the inspections, such as when evidence of

infractions are easily moved elsewhere. *See Burger*, *supra*, 482 U.S. at 710 ("Because stolen cars and parts often pass quickly through an automobile junkyard, 'frequent' and 'unannounced' inspections are necessary in order to detect them.").

In *Players, Inc.*, *supra,* the court recognized the necessity for warrantless inspections because "'advance knowledge of an impending health inspection would provide restaurant owners with the opportunity to take temporary remedial measures designed to mask or conceal violations.'"371 F.Supp.2d at 538 (quoting *Contreras v. City of Chicago*, 920 F.Supp. 1370, 1390 (N.D. Ill. 1996)). The same principle applies here, and plaintiff does not contend otherwise.

### c. Constitutionally Adequate Substitute for Warrant

The third *Burger* factor measures whether the regulatory scheme provides a constitutionally adequate substitute for the warrant procedure. "[T]he regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers." *Burger*, *supra*, 482 U.S. at 703. The regulation must be "'carefully limited in time, place, and scope.'" *Id.* (quoting *Biswell*, *supra*, 406 U.S. at 315).

The Supreme Court determined that the regulations at issue in *Burger* complied with this third requirement because the statute stated that inspections would be made on a regular basis, set forth clear standards for compliance, and stated who was authorized to conduct an inspection. *Id.* at 711. The Smoke Free Act does all of these in its regulations. *See* Ohio Admin. Code § 3701-52-08.

Plaintiff's main contention is that the Smoke Free Act does not contain any restrictions as to time, place, and scope of its authorized inspections. The Supreme Court stated in *Burger* that the

9

main purpose of such limitations is to "place appropriate restraints upon the discretion of the inspecting officers." *Id.*

Plaintiff is incorrect that there are no limitations placed on the discretion of inspectors in the Smoke Free Act. Per the statute, the Department conducts investigations pursuant to reports of violations – which it first screens for reports which might be "frivolous, not made in good faith, or too old to be reasonably investigated." Ohio Admin. Code § 3701-52-08(C)(1-3). The limitations of the statute precludes inspections at the inspectors' discretion. Ohio Admin. Code § 3701-52-08(D). In this instance, moreover, the defendants, by stating at the outset their purpose and basis for the search (the anonymous complaint), conformed to the Act's mandate and that of the Constitution.

While plaintiff is correct in that the regulations contain no written limitations as to time and place of actual inspections, there is a limitation in scope: namely, evidence of smoking or smoking paraphernalia as prohibited in the Smoke Free Act.

Defendants also assert that "[t]he time is limited to business hours for obvious reasons." Though the Act does not contain such a time restriction, the circumstances in which investigators will conduct searches under it are, as a practical matter, self-limiting. Moreover, plaintiff does not claim that inspections have been done outside of normal business hours.

The related Ohio statute providing for the right of entry for the purpose of health inspections also states that "all grounds, vehicles, apartments, buildings, and places . . . where the director [of health] has reason to believe there exists a violation of any health law or rule" is subject to inspection. *See Players, Inc.*, *supra*, 371 F.Supp.2d at 539 (finding regulations limited as to time, place, and scope where inspections were limited to "reasonable times" and gave authority to search "any premises, matter or thing . . . including but not limited to any premises where an activity

10

regulated by this Code is carried on[.]"). This provision, which is more extensive in its reach that the Smoke Free Act, provides backup authority for the kind of search that occurred here.

Plaintiff's reliance on *State v. VFW Post 3562*, 37 Ohio St.3d 310 (Ohio 1988) is misplaced. In that case, the Ohio Supreme Court struck down a regulation allowing Liquor Control Agents to conduct warrantless administrative inspections. *Id.* at 314-15. The basis for the court's decision was that the regulation failed to "establish time, place, and scope limitations." *Id.*

In that case, unlike the situation here, the agents in *VFW Post 3562* used the authority provided by the liquor regulations to investigate "evidence of general criminality" (namely, gambling devices). *Stone v. Stow*, 64 Ohio St.3d 156, 165-66 (Ohio 1992). In *Stone*, as here, the target of the regulation inherently limits the scope of the investigation. *Id.* at 166 (recognizing the limits of the administrative scheme to "track particular often-abused Schedule II and IV drugs" in the highly regulated industry of pharmacies and pharmaceutical drugs).

Ohio's Smoke Free Act authorizes warrantless administrative searches to protect its citizens against the well-documented dangers of and harms from secondhand smoke. The regulation complies with the requirements the Supreme Court set out in *Burger*. The Act, therefore, does not violate plaintiff's Fourth Amendment rights. Because defendants have not violated plaintiff's constitutional rights, they are entitled to dismissal of plaintiff's complaint.

## Conclusion

For the foregoing reasons it is therefore,

ORDERED THAT defendants' motions for judgment on the pleadings [Doc. 16, 17] be, and the same hereby are granted.

So ordered.

s/James G. Carr
Sr. United States District Judge

12